The defendant in his answer admitted that he was the administrator of Thomas Kaywood, Sr., but denied that the plaintiffs were the next of kin of his intestate. He alleged that his wife, Ann, was the legitimate and only child and next of kin of his intestate.
The court thereupon ordered two issues to be made up and submitted to a jury: 1. Were the petitioners the next of kin of Thomas Kaywood, Sr., deceased? 2. Was Ann, the wife of the defendant, the legitimate daughter of the said deceased?
On the trial of these issues at Burke, on the last circuit, before his Honor, Judge Nash, the depositions of two men, to wit: L. Moore and J. Young, were offered on the part of the defendant. These depositions were objected to by the plaintiffs because the deponents were, as they alleged, interested, being sureties for the defendant on his administration bond. The objection was overruled by the court, and the depositions were read. His Honor, in charging the jury, told them that in (89) looking over the depositions, whenever they found a witness speaking as to pedigree from general report they should, in making up their verdict, reject such testimony; that hearsay was evidence of pedigree, but it must be hearsay coming from some member of the family, or from some other person who, from his situation and connection with the party, had an opportunity of knowing the facts.
The jury returned a verdict that the petitioners were not the next of kin and distributees of Thomas Kaywood, Sr., the defendant's intestate, and the plaintiffs appealed. *Page 71 
The first question arising in the case is, did the judge act right in admitting the the depositions to be read in evidence? The deponents Moore and Young had no interest in this record, for, as they were no parties to it, it could never be given in evidence for or against them. Neither could any actual loss or gain result to them simply and immediately from the verdict and judgment. But it is said that if the witnesses are so situated that a legal right or liability, or discharge from liability would immediately result, they would be incompetent. Now it is enough to say in answer to this that under our law it would be clearly competent for the plaintiffs to institute an action on the administration bond against the sureties separately from their principal, and that upon such an action they could, in no way, either by plea or as evidence, avail themselves of the judgment rendered against the plaintiffs in this case. Not being parties nor privies to the record they could neither be benefitted nor prejudiced by the judgment therein; neither be fixed with nor discharged from any legal liability. In an action on a joint and several promissory note, if the action is against the principal the surety is a witness either for the plaintiff or the defendant; for if the surety be afterwards sued on the note and the debt be recovered of him, he can again recover of his principal the debt and costs. Byles on Bills of Exchange, 236, 237. So, if Moore and Young were made liable on the bond they could again recover the debt and costs against Barnett. We therefore think (90) they had not such an interest as to render them incompetent.
The charge of the court as to pedigree is not objectionable. To warrant the admission of declarations relating to pedigree it is essential, first, that the parties who made the declarations be proved to be dead; secondly, that the declarants were likely to know the facts. The tradition must, therefore, be derived from persons so connected with the family that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken. 2 Starkie on Evidence, 604, 605. We are of the opinion that the judgment must be affirmed.
PER CURIAM. Judgment affirmed.
Cited: Governor v. Carter, 25 N.C. 341. *Page 72